**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE KIMBROUGH, | Case No. 1:14-cv-1621-EPG |
| Plaintiff, | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

I.      **INTRODUCTION**

Plaintiff Valerie Kimbrough ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of

the Social Security Act.  The matter is before the Court on the parties' briefs, which were submitted

without oral argument to Magistrate Judge Erica P. Grosjean.[1]  Upon a review of the entire record,

the Court finds the ALJ's decision is proper and is supported by substantial evidence in the record as

a whole.  Accordingly, this Court affirms the agency's determination to deny benefits and denies

Plaintiff's appeal.

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (Docs. 7 and 8).

## II.      FACTS AND PRIOR PROCEEDINGS

In August 2011, Plaintiff filed applications for DIB and SSI alleging disability beginning June 4, 2011.  AR 248,255.[2]  Plaintiff's applications were denied initially and on reconsideration. AR 174-178, 183-189.  Subsequently, ALJ Christopher Larsen held a hearing on April 4, 2013 (AR 37-55), and issued an order denying benefits on April 18, 2013.  AR 20-36.  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review.  AR 1-6.  This appeal followed.[3]

### A.  Plaintiff's Testimony

The hearing was held in Fresno, California.  AR 37.  Plaintiff appeared and testified.  AR 37-55. She was represented by attorney Steven Rosales. AR 39.  Vocational Expert ("VE") Judith Najarian also testified.  AR 52.  A summary of Plaintiff's testimony on her own behalf follows:

Plaintiff was 48 years old at the time of the hearing.  AR 40.  She is a high school graduate and lives with a roommate.  AR 41.  Plaintiff previously worked as a presser at a dry cleaner, a cashier at fast-food restaurants, an assembly line worker at a poultry farm, and a maid.  AR 41-42. About 15-20 years prior to the hearing, Plaintiff was hit in the face with a gun five-times and required surgery to repair damaged bones and nerves in her left cheek.  AR 42-43.  As a result, she

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3]   The Court notes that this is Plaintiff's second appeal filed in this Court.  Plaintiff's first appeal was filed on August 17, 2011, wherein Plaintiff argued that another ALJ (ALJ Kopicki), improperly found her not credible during an administrative hearing held on February 5, 2009. AR 59-69. Magistrate Judge Shiela K. Oberto found the ALJ's credibility assessment was proper and that Plaintiff was not disabled. *See, Kimbrough v. CSS*, 11-cv-1410 SKO (Docs. 1 and 17 and 18).

Plaintiff filed the application for disability at issue in this case on August 11, 2011. The Court notes that generally, principles of *res judicata* apply to administrative decisions and in order to overcome the presumption of continuing non-disability arising from a prior ALJ's finding of non-disability, plaintiff must prove "changed circumstances" indicating a greater disability.  *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).  A changed circumstance includes a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability. It is not clear whether *res judicata* applies in this instance, and the Commissioner has not raised this argument. Accordingly, this Court has not addressed this issue in this decision.

cannot feel anything on the left side of her face.  AR 43.  In 2007, she re-injured her face when someone hit her in the same area, and she has been unable to work since that time.  AR 43.[4]

After her injury, Plaintiff began having severe migraine headaches.  AR 43. Most mornings, she has migraines which are triggered when she exerts minimal effort like getting up too fast, turning her head quickly, or looking the wrong way.  AR 43, 48-49.  The headaches last for five to ten minutes, and will not stop until she rests.  AR 44.  She takes Vicodin to alleviate the pain, but the medicine makes her feel "spacey," so she does not like to take it.  AR 43-44.  She has a history of drug and alcohol abuse, but she gave them up because she does not "want to feel like that anymore." AR 44.

After her injury, Plaintiff became depressed.  AR 45. She also has been diagnosed with post-traumatic stress disorder.  AR 45.  Plaintiff was prescribed Abilify in 2011, to help with her mood swings and insomnia.  AR 45.  Prior to that time, she was taking Paxil, but the Abilify is more effective.  AR 46.

Plaintiff's depression causes her to stay in the house because she does not like to be around other people.  AR 46.   She sits in her closet when her roommate has guests, and only goes out if her sister comes and takes her to church.  AR 45-47.  She sometimes makes a sandwich, but does not cook, grocery shop, or do household chores.  AR 47.  She also does not shower unless reminded to do so. AR 46-48.  Plaintiff does not go out of her home, unless family members are able to persuade her to leave her home.  AR 47.

### B.  Medical Record

The entire medical record was reviewed by the Court.  AR 71-171, 413-497.  However, only the medical evidence that relates to the issues raised in this appeal is summarized below.

///

---

[4] Plaintiff did not testify to all of these facts during the hearing, but shared this information with medical providers during various examinations. AR 441, 448.

*Treatment*

On June 17, 2011, Plaintiff sought treatment at the Fresno County Department of Behavioral Health ("FCDBH"). AR 434. During assessments, she reported a history of cocaine and alcohol abuse, depression, trouble sleeping, difficulty concentrating, and facial trauma. AR 432. Plaintiff further stated she is involved in church, which helps her depression. AR 432. Plaintiff was assigned a mental health plan and began attending weekly group meetings at the Fresno County Department of Health. AR 426. During the group therapy meetings, Plaintiff appeared well-groomed and was cooperative with clinicians, although she often complained of feeling depressed and isolated from others. AR 420-426.

Plaintiff was also evaluated by several physicians at FCDBH. AR 433. On September 2, 2011, Mark Chofla, D.O., performed a psychiatric evaluation. AR 416-418. Dr. Chofla diagnosed Plaintiff with moderate depression and cocaine dependence, in remission. AR 416-418. Dr. Chofla prescribed 10 mg of Prozac and instructed Plaintiff to avoid all habit-forming substances. AR 418.

On October 18, 2011, Plaintiff was examined by Daniel Brooks, M.D. AR 480-481. Plaintiff reported having difficulty sleeping and feeling depressed. AR 480. Dr. Brooks opined that Plaintiff had a good response to a low dose of Prozac and increased the dosage of Plaintiff's prescription of Prozac. AR 480-481.

Dr. Akhbarati began seeing plaintiff on November 22, 2011, and diagnosed Plaintiff with post-traumatic stress disorder, severe depressive disorder with psychotic features, and cocaine and alcohol dependence. AR 478-479. Dr. Akhbarati increased Plaintiff's dosage of Prozac and noted that Plaintiff manages her migraine headaches by taking Vicodin very occasionally. AR 469, 479. On December 23, 2011, Dr. Akhbarati prescribed Plaintiff 5mg of Abilify, and then increased the dosage in June 2012. AR 472. In June 2012, Dr. Akhbarati noted that Plaintiff relapsed and stopped taking her medications for a period of time. AR 472.

***Examining Physician Assessments***

***Dr. Song, M.D., Consultative Examiner***

On September 21, 2011, Sarah Song, M.D., performed a neurological examination. AR 441-443.  At the time, Plaintiff complained of numbness on the left-side of her face, frequent headaches, trouble sleeping, depression and impaired short-term memory.  Dr. Song found a bony abnormality and a patch of numbness along the Plaintiff's left cheek.  AR 442.  Plaintiff's left side of her face was swollen.  AR 442. Her reflexes, coordination, motor and sensory function was normal.  AR 442. She had minimal difficulty with tandem gait, but otherwise her gait and stance were normal.  AR 443.

Dr. Song diagnosed Plaintiff with chronic headaches and facial paralysis secondary to trauma.  AR 443.  Dr. Song noted that Plaintiff is capable of standing and walking for a total six hours in an eight hour work day, that she could sit without restriction, and that she could lift and carry twenty pounds occasionally and ten pounds frequently.  AR 443.  Dr. Song opined that the Plaintiff should avoid loud areas, sudden and repetitive movements, and flashing lights.  AR 443.

***Dr. Michiel, M.D., Consultative Examiner***

On October 15, 2011, Ekram Michiel, M.D., performed a psychiatric examination.  AR 448-451.  Plaintiff reported that she started to feel depressed in 2008 when her partner died of a heart attack in front of her.  AR 448.  Plaintiff further stated that she doesn't sleep well, spends most of her time alone, and experiences pain on the left side of her face.  AR 448.  Upon examination, Plaintiff was fairly well-groomed, had adequate personal hygiene, a normal gait and posture, depressed mood, normal speech with mild latency, and a goal-directed thought process. AR 449. Plaintiff's concentration and attention were intact. AR 450. Her immediate recall was slightly impaired and her judgment was intact.  AR 450.  She appeared able to do simple math calculations. AR 450.  Her long-term and short-term memory was intact.  AR 450.

5

1
2
3
4
5

Dr. Michiel diagnosed Plaintiff with anxiety, generalized depression, and cocaine and alcohol dependence, both in remission. AR 450. Dr. Michiel opined that Plaintiff could maintain the attention and concentration necessary to carry out simple job instructions; could relate and interact with coworkers, supervisors and the general public; had no restrictions on daily living activities; and is unable to carry out an extensive variety of technical or complex instructions. AR 450-451.

6

### *State Agency Non-Examining Opinions*

7
8
9
10
11

On November 4, 2011, Dr. Roger Fast, M.D., reviewed the Plaintiff's medical documentation and opined that Plaintiff's physical impairments were non-severe. AR 78. Similarly, on April 17, 2012, Dr. C. Bullard, M.D., also opined that Plaintiff's physical impairments were non-severe. AR 128-129.

12
13
14
15
16
17
18
19
20
21
22
23

On November 16, 2011, Dr. E. Murrillo, M.D., reviewed the medical record regarding the Plaintiff's medical impairments and completed a Physical Residual Functional Capacity Assessment. AR 78-82. Dr. Murrillo opined Plaintiff had medically determinable impairments that could be reasonably expected to produce Plaintiff's pain and other symptoms. AR 78. Dr. Murrillo found Plaintiff's ability to understand and remember detailed instructions to be moderately limited and opined that Plaintiff had sustained concentration and persistence limitations. AR 80. Dr. Murrillo opined that Plaintiff's ability to interact with others, ask simple questions, accept and respond to criticism, and maintain socially appropriate behavior was not significantly limited. AR 81-82. Dr. Murrillo opined that Plaintiff had some limitations in her ability to perform certain work, but could perform simple and routine tasks. AR 81-83.

24
25
26

On April 25, 2012, Dr. Harvey Bilik, Psy.D., reviewed the medical record and completed a Physical Residual Functional Capacity Assessment. AR 129-133. Dr. Bilik opined that Plaintiff could understand and remember simple detailed instructions, but her ability to carry out detailed

27
28

1   instructions, maintain attention and concentration, and perform activities within a schedule was

2   moderately limited.   AR 146-147.

3   ### III.    THE DISABILITY DETERMINATION PROCESS

4       To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she

5   is unable to engage in substantial gainful activity due to a medically determinable physical or mental

6   impairment that has lasted or can be expected to last for a continuous period of not less than twelve

7
8   months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

9       . . . his physical or mental impairment or impairments are of such severity that he is not only
        unable to do his previous work, but cannot, considering his age, education, and work
10      experience, engage in any other kind of substantial gainful work which exists in the national
        economy, regardless of whether such work exists in the immediate area in which he lives, or
11      whether a specific job vacancy exists for him, or whether he would be hired if he applied for
12      work.

13   42 U.S.C. § 1382c(a)(3)(B).

14      To achieve uniformity in the decision-making process, the Commissioner has established a

15   sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 416.920(a).

16   The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant

17
18   is or is not disabled.  20 C.F.R. § 416.920 (a)(4).  The ALJ must consider objective medical evidence

19   and opinion testimony.  20 C.F.R. § 416.913.

20      Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial

21   gainful activity during the period of alleged disability; (2) whether the claimant had medically-

22   determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent

23   to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the

24
25   claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and

26   (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the

27   regional and national level. 20 C.F.R. § 416.920(a)(4).

28   ///

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.  The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 24-32.  More particularly, the ALJ found that Plaintiff met the insured status requirements through December 31, 2011, and that she had not engaged in any substantial gainful activity since June 4, 2011, the alleged disability onset date. AR 25.  Further, the ALJ identified depressive disorder, post-traumatic stress disorder, left-sided neuralgia, and headaches as severe impairments.  AR 25.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 25.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, but must avoid concentrated exposure to hazards, temperature extremes, loud noises, and can only perform simple repetitive tasks. AR 26.  In making this determination, the ALJ found the Plaintiff's symptom testimony was not credible.  AR 29.  After considering the testimony of a vocational expert, the ALJ determined that Plaintiff could perform past relevant work as a cleaner or housekeeper.  AR 30.  He also determined Plaintiff could perform the job of a mail sorter.  AR 30-31.  As a result, Plaintiff was not disabled under the Social Security Act.  AR 31.

### IV.     SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

1
2
3
4
5

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

6
7

## V.   DISCUSSION

8

### A. The ALJ Properly Discredited Plaintiff's Subjective Complaints.

9
10
11
12
13
14
15

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding her testimony not credible. (Doc. 13.)  Specifically, Plaintiff contends that the ALJ relied upon boilerplate reasons to reject the Plaintiff's testimony. In reply, the Commissioner asserts that the ALJ properly evaluated Plaintiff's subjective complaints. (Doc. 16).  A review of the record reveals that contrary to Plaintiff's assertions, the ALJ provided clear and specific reasons for his credibility determination and therefore properly assessed Plaintiff's testimony.

16
17
18
19
20
21
22
23
24
25
26
27

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec*., 775 F. 3d 1090, 1098 (9th Cir. 2014).  First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id.*  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so.  *Id.; Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").  Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or

28

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, following an in-person hearing, the ALJ found that Plaintiff's "medically-determinable impairments can reasonably be expected to produce her alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of those symptoms are not entirely credible." AR 29. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

As noted above, because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown –Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

Here, the ALJ stated the following regarding Plaintiff's credibility:

Ms. Kimbrough described daily activities inconsistent with her complaints of disabling symptoms and limitations. She reported she could care for her personal hygiene, shop, complete household chores, and attend church. This is also inconsistent with Ms. Kimbrough's testimony that she could only bathe.

Ms. Kimbrough testified she does not shop, but in her Pain Questionnaire dated March 21, 2012, she reported running errands with her aunt and sister. Additionally, she told Dr. Michiel she could shop.

10

1
2
3

> Ms. Kimbrough also testified she does not want to deal with other people or go outside. However, she currently has a roommate. In addition, she reported she liked living alone because she used to live with many roommates, which is understandable. Further, she attends church regularly and participates in church functions. Finally, she shops and attends medical appointments and group therapy.

4

AR 29-30 (citation omitted).

5
6

The ALJ also considered Plaintiff's sporadic work history in evaluating her credibility, as

7

well as the "lack of diagnostic and other objective evidence, which reveals no physiological basis for

8

the extreme pain and limitation alleged." AR 29-30.  Thus, the ALJ relied on: 1) inconsistencies

9

between the Plaintiff's symptoms and the record including her reports of activities of daily living; 2)

10

the Plaintiff's work history; and 3) the objective medical evidence when assessing Plaintiff's

11

credibility.

12
13

A review of the record reveals that the reasons the ALJ relied upon in discrediting Plaintiff's

14

symptoms are clear and convincing reasons that are supported by substantial evidence.  For example,

15

the ALJ correctly noted that during a medical assessment with Dr. Michiel, Plaintiff stated she took

16

care of her personal hygiene, shopped, did household chores, and attended church.  AR 449.

17

Additionally, Plaintiff was able to attend weekly group therapy meetings and medical appointments.

18

AR 413-497.  The ALJ also noted that in a pain questionnaire, Plaintiff reported that she runs

19

errands with her aunt or sister.  AR 378.  These statements are inconsistent with Plaintiff's testimony

20

that she does not grocery shop, do household chores, or leave her home unless she goes to church

21
22

with her sister.  AR 46-48.  The ALJ was entitled to consider these inconsistencies in making a

23

credibility determination. *Thomas*, 278 F.3d at 958-59 (in making credibility determination, the ALJ

24

may consider inconsistencies or discrepancies in a claimant's statements). Moreover, contradictions

25

in the ability to perform activities of daily living are also a valid consideration when evaluating a

26

claimants' credibility.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[E]ven where

27

[the daily] activities suggest some difficulty functioning, they may be grounds for discrediting the

28

claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.");

*Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly determined that the claimant's

daily activities "did not suggest [the claimant] could return to his old job at Cummins, but . . . did

suggest that [the claimant's] later claims about the severity of his limitations were exaggerated.");

*Thomas*, 278 F. 3d at 959 ([A] claimant's "ability to perform various household chores such as

cooking, laundry, washing dishes and shopping," among other factors, bolstered "the ALJ's negative

conclusions about [her] veracity.").

The ALJ also found that Plaintiff's credibility was weakened by her overall poor work record

prior to her alleged disability date.  AR 30, 280.  This is supported by Plaintiff's testimony that she

has not worked since 2007, and prior to that time, she worked at temporary jobs.  AR 41-42.

Additionally, the record reveals that Plaintiff worked less than half of the time between 1982-2012.

AR 280.  Here, the ALJ properly considered Plaintiff's overall work history in discrediting her

statements, and such reasoning is supported by substantial evidence in the record. *See, Thomas,* 278

F.3d at 959 (ALJ properly found poor work history and lack of propensity to work in lifetime

negatively affected claimant's credibility regarding her inability to work); *Light,* 119 F.3d at 792 (the

ALJ may consider a claimant's work record in weighing the claimant's credibility).

Finally, the ALJ noted there was no physiological basis for the extreme pain and limitations

alleged by Plaintiff.  AR 29.  Although the ALJ did a thorough review of the medical evidence and

noted that Plaintiff received minimal treatment, and only occasionally used Vicodin for pain (AR

27), the Court has some concerns that the ALJ did not fully articulate these reasons as a basis to

reject Plaintiff's testimony in his credibility analysis. Under *Brown-Hunter,* the observations an ALJ

makes as part of the summary of the medical record is not sufficient to establish clear and

convincing reasons for rejecting a Plaintiff's credibility.  *Id.* at 494.  Instead, the ALJ must link the

medical evidence at issue to the Plaintiff's testimony. *Id.*  Here, the ALJ did not do so.

1
2
3
4
5
6
7
8
9
10

Notwithstanding the above, this error is harmless due to the other reasons articulated by the ALJ including Plaintiff's inconsistent statements and her prior work history. *See Carmickle*, 533 F.3d at 1162 (citing *Batson v. Comm. of Soc. Sec. Admin.,* 359 F. 3d 1190, 1197 (9th Cir. 2004) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion' such is deemed harmless and does not warrant reversal."); *Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001) (that some reasons for discrediting claimant's testimony should be properly discounted does not render an ALJ's determination invalid so long as that determination is supported by substantial evidence).

11
12
13
14
15
16
17
18
19
20
21
22
23

Given the above, the ALJ provided clear and convincing reasons outlined above that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible.  Here, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints.  *Brown-Hunter,* 806 F. 3d at 493; *Lester,* 81 F.3d at 834.  It is not the role of the Court to re-determine Plaintiff's credibility de novo.  If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).  Accordingly, the ALJ's credibility determination was proper.

## CONCLUSION

24
25
26
27
28

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

1
2

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Valerie Kimbrough.

3

4    IT IS SO ORDERED.

5

6       Dated:    **February 2, 2016**              /s/ _Erica P. Grosjean_
                                          UNITED STATES MAGISTRATE JUDGE

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28